# EXHIBIT A


# SUMMONS - CIVIL

JD-CV-1 Rev. 9-14
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a, 52-48, 52-259, P.B. Secs. 3-1 through 3-21, 8-1

STATE OF CONNECTICUT
**SUPERIOR COURT**
*www.jud.ct.gov*

**See other side for instructions**

☐ "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.
☒ "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.
☐ "X" if claiming other relief in addition to or in lieu of money or damages.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed *(Number, street, town and zip code)* *(C.G.S. §§ 51-346, 51-350)* | Telephone number of clerk *(with area code)* | Return Date *(Must be a Tuesday)* |
|---|---|---|
| **1 Court Street, Middletown, CT 06457** | **( 860 )343-6400** | **1** (Month) **27** (Day), **2015** (Year) |
| ☒ Judicial District ☐ Housing Session ☐ G.A. Number: | At *(Town in which writ is returnable) (C.G.S. §§ 51-346, 51-349)* **Middletown** | Case type code *(See list on page 2)* Major: **T90** Minor: |

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* | Juris number *(to be entered by attorney only)* |
|---|---|
| **Marjorie Mesidor, Phillips & Associates, PLLC., 45 Broadway, Suite 620, New York, NY 10006** | **423564** |

| Telephone number *(with area code)* | Signature of Plaintiff *(If self-represented)* |
|---|---|
| **(212) 248-7431** | |

The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book. ☒ Yes ☐ No

Email address for delivery of papers under Section 10-13 *(if agreed to)*: **msharpe@tpglaws.com**

Number of Plaintiffs: **1** | Number of Defendants: **1** | ☐ Form JD-CV-2 attached for additional parties

| Parties | Name *(Last, First, Middle Initial)* and Address of Each party *(Number; Street; P.O. Box; Town; State; Zip; Country, if not USA)* | |
|---|---|---|
| **First Plaintiff** | Name: **Miguel Azcona**<br>Address: 1760 Bruckner Blvd., 6B, Bronx, NY 10473 | P-01 |
| **Additional Plaintiff** | Name:<br>Address: | P-02 |
| **First Defendant** | Name: **Wal-Mart Stores, Inc.**<br>Address: ~~C/O Registered Agent:~~ **CT Corporation System, One Corporate Center, Floor 11, Hartford, CT 06103** | D-01 |
| **Additional Defendant** | Name:<br>Address: | D-02 |
| **Additional Defendant** | Name:<br>Address: | D-03 |
| **Additional Defendant** | Name:<br>Address: | D-04 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at *www.jud.ct.gov* under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at *www.jud.ct.gov* under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. **The Clerk of Court is not allowed to give advice on legal questions.**

| Signed *(Sign and "X" proper box)* | ☐ Commissioner of the Superior Court ☐ Assistant Clerk | Name of Person Signing at Left | Date signed |
|---|---|---|---|
| | | | |

If this Summons is signed by a Clerk:
a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint.

*For Court Use Only*
File Date

| I certify I have read and understand the above: | Signed *(Self-Represented Plaintiff)* | Date |
|---|---|---|
| | | |

Name and address of person recognized to prosecute in the amount of $250

| Signed *(Official taking recognizance; "X" proper box)* | ☐ Commissioner of the Superior Court ☐ Assistant Clerk | Date | Docket Number |
|---|---|---|---|
| | | | |

A True Copy Attest:
James J. Guerrera Sr.
Connecticut State Marshal
Essex, CT 06426
(860) 767-4943

## Instructions

1. *Type or print legibly; sign summons.*
2. *Prepare or photocopy a summons for each defendant.*
3. *Attach the original summons to the original complaint, and attach a copy of the summons to each copy of the complaint. Also, if there are more than 2 plaintiffs or more than 4 defendants prepare form JD-CV-2 and attach it to the original and all copies of the complaint.*
4. *After service has been made by a proper officer, file original papers and officer's return with the clerk of court.*
5. *The party recognized to pay costs must appear personally before the authority taking the recognizance.*
6. *Do not use this form for the following actions:*

   *(a) Family matters (for example divorce, child support, custody, paternity, and visitation matters).*
   *(b) Summary process actions.*
   *(c) Applications for change of name.*
   *(d) Probate appeals.*
   *(e) Administrative appeals.*
   *(f) Proceedings pertaining to arbitration.*
   *(g) Any actions or proceedings in which an attachment, garnishment or replevy is sought.*

### ADA NOTICE

The Judicial Branch of the State of Connecticut complies with the Americans with Disabilities Act (ADA). If you need a reasonable accommodation in accordance with the ADA, contact a court clerk or an ADA contact person listed at *www.jud.ct.gov/ADA.*

## Case Type Codes

| Major Description | Codes Major/ Minor | Minor Description |
|---|---|---|
| **Contracts** | C 00 | Construction - All other |
| | C 10 | Construction - State and Local |
| | C 20 | Insurance Policy |
| | C 30 | Specific Performance |
| | C 40 | Collections |
| | C 90 | All other |
| **Eminent Domain** | E 00 | State Highway Condemnation |
| | E 10 | Redevelopment Condemnation |
| | E 20 | Other State or Municipal Agencies |
| | E 30 | Public Utilities & Gas Transmission Companies |
| | E 90 | All other |
| **Miscellaneous** | M 00 | Injunction |
| | M 10 | Receivership |
| | M 20 | Mandamus |
| | M 30 | Habeas Corpus (extradition, release from Penal Institution) |
| | M 40 | Arbitration |
| | M 50 | Declaratory Judgment |
| | M 63 | Bar Discipline |
| | M 66 | Department of Labor Unemployment Compensation Enforcement |
| | M 68 | Bar Discipline - Inactive Status |
| | M 70 | Municipal Ordinance and Regulation Enforcement |
| | M 80 | Foreign Civil Judgments - C.G.S. 52-604 & C.G.S. 50a-30 |
| | M 82 | Housing Civil Matters |
| | M 83 | Small Claims Transfer to Regular Docket |
| | M 84 | Foreign Protective Order |
| | M 90 | All other |
| **Property** | P 00 | Foreclosure |
| | P 10 | Partition |
| | P 20 | Quiet Title/Discharge of Mortgage or Lien |
| | P 30 | Asset Forfeiture |
| | P 90 | All other |

| Major Description | Codes Major/ Minor | Minor Description |
|---|---|---|
| **Torts (Other than Vehicular)** | T 02 | Defective Premises - Private - Snow or Ice |
| | T 03 | Defective Premises - Private - Other |
| | T 11 | Defective Premises - Public - Snow or Ice |
| | T 12 | Defective Premises - Public - Other |
| | T 20 | Products Liability - Other than Vehicular |
| | T 28 | Malpractice - Medical |
| | T 29 | Malpractice - Legal |
| | T 30 | Malpractice - All other |
| | T 40 | Assault and Battery |
| | T 50 | Defamation |
| | T 61 | Animals - Dog |
| | T 69 | Animals - Other |
| | T 70 | False Arrest |
| | T 71 | Fire Damage |
| | T 90 | All other |
| **Vehicular Torts** | V 01 | Motor Vehicles* - Driver and/or Passenger(s) vs. Driver(s) |
| | V 04 | Motor Vehicles* - Pedestrian vs. Driver |
| | V 05 | Motor Vehicles* - Property Damage only |
| | V 06 | Motor Vehicle* - Products Liability Including Warranty |
| | V 09 | Motor Vehicle* - All other |
| | V 10 | Boats |
| | V 20 | Airplanes |
| | V 30 | Railroads |
| | V 40 | Snowmobiles |
| | V 90 | All other |
| | | *Motor Vehicles include cars, trucks, motorcycles, and motor scooters. |
| **Wills, Estates and Trusts** | W 10 | Construction of Wills and Trusts |
| | W 90 | All other |

MIGUEL AZCONA,

Plaintiff,

v.

WAL-MART STORES, INC.,

Defendant.

SUPERIOR COURT
JUDICIAL DISTRICT OF MIDDLESEX

AT MIDDLETOWN

DECEMBER 24, 2014

# COMPLAINT

## SUMMARY OF THE CASE

Plaintiff complains pursuant to the Connecticut Fair Employment Practices Act, Conn. Gen. Stat § 46a-60 *et seq*. ("CFEPA") and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. ("ADA") and seeks damages to redress the injuries Plaintiff has suffered as a result of being Discriminated against and Constructively Terminated by his employer solely due to his Disability (Deaf).

## PARTIES

1. At all times relevant hereto, Plaintiff MIGUEL AZCONA ("AZCONA") was a resident of the State of Connecticut and is currently a resident of the State of New York.

2. Plaintiff AZCONA is deaf.

3. At all times relevant hereto, Defendant WAL-MART STORES, INC. ("WAL-MART") is a foreign business corporation with its corporate headquarters located at 702 SW 8th Street, Bentonville, Arkansas 72716.

4. Defendant owns and operates a retail WAL-MART store located at 161 Berlin Road Cromwell, Connecticut 06416.

5. At all times relevant hereto, Plaintiff AZCONA was a full time employee of Defendant

    WAL-MART at their 161 Berlin Road, Cromwell, Connecticut location.

6.  Defendant WAL-MART is referred to herein as Defendant.

**MATERIAL FACTS**

7.  Defendant hired Plaintiff in or around March 2013 as a maintenance employee earning $8.25 per hour.

8.  Defendant knows and knew at all relevant times that Plaintiff is deaf.

9.  Plaintiff's job responsibilities included cleaning the store bathrooms, managing the flow of customers into the bathrooms, ensuring that the aisles were clear of any messes for customers, cleaning the parking lot closest to the store, cleaning shipping base area, cleaning entrance way, cleaning up after customers' broken glass, spills and the like, placing caution signs on the floors and mopping floors, cleaning hazardous waste and blood, clean glass doors, clean each groove in the doors, clean recycling area, ensure that trash was taken out, clean shelves and under shelves in stockroom, clean office' floors, rooms and isles.

10.  Plaintiff would communicate with his supervisors using his phone to type out messages or write messages on a pad of paper. Plaintiff would also gesture and act out what he intended to communicate.

11.  The Bureau of Rehabilitative Services (BRS) assigned a job coach for Plaintiff, who was on the job with Plaintiff for one (1) month until it was determined that Plaintiff was independent and comfortable. After the one (1) month period, Plaintiff's job coach would periodically follow-up with Plaintiff.

12.  From the start of his employment with Defendant WAL-MART, Plaintiff received compliments for his work performance.

13. However, in or around April 2013, Defendants changed their policy toward Plaintiff and would no longer allow him to use his phone to type out messages to his supervisors or coworkers. Maria, one of Plaintiff's supervisors told Plaintiff that he could not use his phone to text. An interpreter from BRS had to intercede and speak to Defendant on behalf of Plaintiff.

14. Additionally, Defendant's managers and specifically, the store manager, JD Rine, began making false complaints that Plaintiff's sneakers were making "too much noise" as he cleaned the bathroom or moved around the store.

15. Furthermore, since (according to management) Plaintiff's sneakers made too much noise, when he walked out of the store, Plaintiff was not permitted to go outside for lunch.

16. Defendant's managers also instituted a policy directed only at Plaintiff relegating him to certain areas of the store; isolating Plaintiff from customers and other coworkers. When Plaintiff would walk outside of the designated area, he was admonished.

17. By way of example, Plaintiff was prohibited from walking near the front of the store or exiting the store on his break.

18. Upon information and belief, this policy was not applied to any other employee in the store.

19. Although Plaintiff could not hear what Defendant's managers were saying about him to customers or other employees, he could tell that Defendant's managers were disparaging him around the store and he began to feel like an outcast.

20. Plaintiff was forced to endure the weight of mockery as co-workers around him covered their ears as they walked by him, pointed at him, moved their mouths to simulated talking without saying words, walked away from him and told customers to avoid him.

21. Attempting to ameliorate the situation, Plaintiff began changing his shoes in different parts of the store to try and reduce the "alleged" noise. Plaintiff changed his shoes four (4) different times. Moreover, Plaintiff thought that the noise might be a result of the mixture that was used on the floor and tried different mixtures in an effort to avoid the "alleged" noise.

22. Furthermore, Plaintiff was informed that his co-workers were laughing at him and gossiping about him.

23. For instance, once, when a police officer entered the store, co-workers began speaking with the officer while pointing to Plaintiff, while another co-worker, taking advantage of the fact that Plaintiff could not hear, made him believe that the officer was inquiring about him.

24. Although Plaintiff was continuously told that his shoes made too much noise, when friends and family visited the store, they informed Plaintiff that his sneakers were not noisy.

25. Resolved to alleviate the tensions regarding the purported noise issue, Plaintiff approached his managers to try to proactively resolve the issue.

26. However, the managers offered no potential solutions to rectify the purported noise issue and continued to complain that Plaintiff's sneakers were making too much noise.

27. Upon information and belief, Defendant attempted to use this "noise issue" as a pretext to isolate, humiliate and shun Plaintiff.

28. Plaintiff asked members of his family if the sneakers he wore made any noise. They each responded that they did not.

29. Notwithstanding, Plaintiff even bought new shoes with different soles hoping that this would resolve the issue.

30. Despite Plaintiff's best efforts, Defendants' managers continued to falsely complain that Plaintiff was making "too much noise", a continued complaint that caused tension between these managers, Plaintiff, and even other coworkers.

31. Notwithstanding the growing tensions, in or around August or September 2013, Plaintiff was voted to become supervisor as a result of his work performance.

32. The comments still persisted however, with managers warning other coworkers: "Don't be loud like [Plaintiff]" and "Don't make noise like [Plaintiff]."

33. Plaintiff was the only employee who Defendants' managers used as an example of what not to do.

34. By November 2013, Plaintiff's working environment had deteriorated significantly.

35. Although he was unable to hear what announcements were being made over the storewide speakers, Defendants' managers would make announcements and customers would immediately walk away from Plaintiff once the announcement had finished. Plaintiff interpreted these reactions to mean that the announcements were disparaging about him.

36. Plaintiff also began to notice behavioral changes in coworkers and managers around him.

37. By way of example, "Angie" and "Maria", two of Plaintiff's direct supervisors, effectively stopped communicating to Plaintiff altogether.

38. By way of further example, Mr. Rine would complain about Plaintiff making noise on an almost daily basis despite all of Plaintiff's attempts to rectify his purported noise issue.

Although Mr. Rine insisted on a quiet environment, at no point did he propose any solution to remedy the purported noise issue.

39. Moreover, Defendant began taking illegal deductions out of Plaintiff's paychecks.

40. These deductions were made for cleaning supplies such as, towels when Plaintiff would clean up aisles during inclement weather, cleaning solution, and paper when Plaintiff would print anything on the computer (such as his schedule or pay stubs).

41. Upon information and belief, no other non-disabled employee of Defendant was made to pay for such items.

42. As a result of the persistent noise complaints, the requirement that Plaintiff remain in designated areas, his managers refusing to communicate with him altogether, the illegal deductions for basic items Plaintiff needed to complete his job, and being treated like a pariah throughout the store, Plaintiff was unable to withstand such a working environment and was therefore constructively terminated on or around January 5, 2014.

43. Defendant created a hostile work environment which no reasonable person would tolerate.

44. Plaintiff AZCONA's deafness is an impairment that substantially limits one or more of his major life activities within the meaning of §12102(1)(A) of the ADA.

45. Plaintiff AZCONA is a qualified individual who can perform the essential functions of his employment with a reasonable accommodation as defined by §12111(8) of the ADA.

46. Defendant's actions and conduct were intentional and intended to harm the Plaintiff.

47. As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

48. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

49. As a result of the above, Plaintiff AZCONA has been damaged in an amount in excess of the jurisdiction of the Court.

50. Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff AZCONA demands Punitive Damages as against Defendant.

**AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION  
UNDER THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT**

51. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

52. The Connecticut Fair Employment Practices Act, § 46a-60, provides that it shall be unlawful discriminatory practice: "For any employment agency, except in the case of a bona fide occupational qualification or need, to fail or refuse to classify properly or refer for employment or otherwise to discriminate against any individual because of such individual's race, color, religious creed, age, sex, gender identity or expression, marital status, national origin, ancestry, present or past history of mental disability, intellectual disability, learning disability or physical disability, including, but not limited to, blindness."

53. Defendant violated the section cited herein as set forth.

**AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT**

54. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

55. The Connecticut Fair Employment Practices Act, § 46a-60, provides that it shall be unlawful discriminatory practice: "For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so."

56. Defendants violated the section cited herein as set forth.

**AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT**

57. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

58. Plaintiff claims Defendant violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

59. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

60. Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his disability.

61. As such, Plaintiff has been damaged as set forth herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by the ADA and CFEPA by discriminating against Plaintiff on the basis of his disability and constructively terminating his employment;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: New York, New York
December 24, 2014

PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC

By: Marjorie Mesidor /s
Marjorie Mesidor, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
(212) 248-7431

A True Copy Attest:
James J. Guerrera Sr.
Connecticut State Marshal
Essex, CT 06426
(860) 767-4943

mmesidor@tpglaws.com